IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STEELWORKERS OF AMERICA, AFL-CIO/CLC, | ) ) ) |
| Plaintiff, | ) ) ) Civil Action No. 04-12489 |
| v. | ) ) |
| Pliant Corporation, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

I. **Introduction**

Under the Worker Adjustment Retraining and Notification Act ("WARN"), 29 U.S.C. § 2101 *et. seq.*, an employer permanently shutting down a facility with at least fifty (50) employees (who will suffer an employment loss as a result of the shutdown) must provide those employees, or their exclusive bargaining representative, at least 60 days notice before effecting a plant shutdown. In this case, the Defendant provided the 50 employees at its now-defunct Harrisville, Rhode Island facility only 16 days notice before affecting a permanent shutdown of the same. As a result of the shutdown, the Defendant planned to terminate all 50 employees at its Harrisville facility, and each of the Defendant's employees suffered an employment loss as defined by the WARN Act. Hence, by its actions, the Defendant violated the WARN Act's notice requirement and, therefore, should be required to make whole all affected employees.

The Defendant's Motion to Dismiss improperly truncates and mischaracterizes the facts within the Union's Complaint, to conclude that notice was not required under WARN because less than 50 employees suffered an employment loss within the requisite statutory time period as defined by the WARN Act. Specifically, the Defendant asserts that because some employees "continued to work" at the facility for an indefinite period after the shutdown they did not suffer an employment loss under the Act. On the contrary, taken in context, the alleged facts within the Union's Complaint demonstrate that after the shutdown, the employees who "continued to work" lost their permanent positions terminated when plant operations closed, and thereafter, worked only in temporary positions that bore no resemblance to their pre-shutdown employment. Under the WARN Act, employees suffer an "employment loss" after a plant shutdown, even if they are given replacement positions or transferred, if those positions are not substantially equivalent to their pre-shutdown employment. *See* 20 C.F.R. § 639.3(f)(2); *Local 819, Int'l Bhd. of Teamsters, AFL-CIO v. Textile Deliveries, Inc.,* 2000 WL 1357494 (S.D.N.Y. 2000). Moreover, an employer cannot evade the notice requirements of the Act by planning a phased shutdown of a plant and by employing individuals in a temporary capacity so that less than 50 employees will suffer an "employment loss" within the prescribed statutory period. *See Amatuzio v. Gandalf Systems Corp.*, 994 F. Supp. 253, 276 (D. NJ 1998); *see also* 20 C.F.R. 639.5(a)(ii). Thus, under the applicable standard for reviewing the Defendant's Motion to Dismiss, viewed in a light most favorable to the Plaintiff, the facts alleged in its Complaint entitle the Plaintiff to relief, and the Court should deny the Defendant's Motion.

**II.**     **Facts**

For the purposes of opposing the Defendant's instant Motion, the Union sets forth the following facts, all of which relate to the shutdown of the Defendant's Harrisville facility on September 10, 2004:

Prior to the shutdown of the Harrisville, Rhode Island facility, the Union was the exclusive representative for all maintenance and production employees at the Defendant's Harrisville, Rhode Island facility within the meaning of WARN, 29 U.S.C. §2101(a)(4), and the Defendant was an employer, as defined by 29 U.S.C. § 2101(a)(1)(A). Complaint, ¶¶ 1-2, 5.

At all times prior to the announcement of the shutdown on August 25, 2004, the Company had at least 50 full-time employees at its Harrisville, Rhode Island facility.[1] *Id*. at ¶¶ 8-12. On August 24, 2004, thirty-six employees were working in managerial, clerical, maintenance, and production positions at the Harrisville Plant, eight employees were on temporary disability leave, and six employees were on temporary lay off. *Id*. at ¶

---

[1] For example, as of July 30, 2004, thirty-eight employees were working in managerial, clerical, maintenance, and production positions at the Harrisville Plant, eight employees were on temporary medical leaves of absence, and four employees were on lay-off. All eight employees on medical leave reasonably intended to return to work upon recovery. *Id*. at ¶ 8. All eight were on a temporary disability leave during their medical leaves. *Id*. at ¶ 9. Further, each remained on the payroll throughout their temporary disability leave, continued to receive health insurance supplied by the Company, and intended to return to work upon their recovery. *Id*. at ¶¶ 9.
   Similarly, all four employees on lay-off had a reasonable expectation of recall. Lay-offs due to fluctuations in product demand were extremely common at the Harrisville plant. *Id*. at ¶ 10. At the Harrisville plant, the Company made flexible plastic packaging—*i.e*., plastic film used for a wide variety of uses ranging from food packaging to medical storage. *Id*. at ¶ 10. The Company also made this product in other plants, including its facilities in South Deerfield, Massachusetts and Mexico City, Mexico. *Id*. at ¶ 10. During the Company's history, it was not uncommon for the Company to shift production from one plant to another, on the basis of demand within regional markets. At various times over the 3 years in which the Company operated the Harrisville Plant, there were generally between four and twelve production workers laid off. *Id*. at ¶ 10. Under the Contract between the parties, all production workers were represented by the Union and Union members who had been laid off retained recall rights for 2 years. *Id*. at ¶ 10. Three of the four production employees on lay off had been laid off for less than two months; the other had been laid off for less than five months. *Id*. at ¶ 10.

12. As of August 24, 2004, the eight employees on medical leave expected to return to work upon recovery, and the six laid off employees had every reasonable expectation that they would return to work once production increased at the Harrisville plant.[2] *Id*. at ¶ 12.

On August 25, 2004, the Company announced to the Union and all employees that it intended to permanently shutdown the Harrisville facility, due to the age of the facility and the equipment therein. *Id*. at ¶ 13. The Company stated at production lines would close as of September 30, 2004, and the entire plant would close October 15, 2004. *Id*. at ¶ 13. Prior to the Company's August 25 announcement, the Union had no notice that the Company intended to close the Harrisville plant.[3] *Id*. at ¶ 14.

On September 8, 2004, the Company announced that it had revised its shutdown plan and that the production line would shutdown permanently on September 10, 2004; all production workers would be permanently laid off as of September 10, 2004. *Id*. at ¶ 15. The Company announced that all other employees of the Harrisville plant would be permanently laid off on or before October 15, 2004. *Id*. at ¶ 15.

As of September 10, 2004, the production line was permanently closed and the plant was effectively shutdown. *Id*. at ¶ 16. A few workers who had been offered temporary positions winding down and dissembling the plant or serving as plant guards until the facility could be sold continued to work at the plant. *Id*. at ¶ 16.   The workers'

---

[2] Under the WARN Act, individuals on medical leave and layoff with a reasonable expectation of return at the time of a plan shutdown are considered "affected employees" who experience job loss. *See* 20 CFR 639.3 (e); *Teamsters, et al. v. Norcal Waste Systems*, 2004 WL 1975220 (N.D. Cal. 2004); *United Mine Workers v. Martinka Coal Company*, 45 F. Supp. 2d 521 (N.D. W.Va. 1999); *Local 819, Int'l Bhd. of Teamsters, AFL-CIO v. Textile Deliveries, Inc.,* 2000 WL 1357494.

[3] In fact, prior to the shutdown announcement, a new successor contract between the parties had been executed on July 14, 2004, for the period of July 14, 2004 to July 14, 2007. *Id*. at ¶ 14. During bargaining for that agreement, the Company did not notify the Union that plant was closing or likely to close. *Id*. at ¶ 14.  Rather, at the commencement of bargaining, the Company announced that the Harrisville facility, like all other Company facilities, were under review. *Id*. at ¶ 14.

4

temporary positions varied considerably from their former positions prior to the plant closing. *Id*. at ¶¶ 15-16. Moreover, these workers' tenure was explicitly limited by the Defendant to the time needed to wind down and sell the Harrisville facility. *Id*. at ¶¶ 15-15. Finally, the temporary workers had completely different job duties after the shutdown, relating to dissembling the plan and guarding the plant—a far cry from their previous production, maintenance, administrative, and managerial duties. *Id*. at ¶¶ 1,16.

The Defendant provided notice of the shutdown to the Union and its members only 16 days before permanently shutting down the Harrisville plant. *Id*. at ¶¶ 13, 15-16.

### III.   Standard of Review

In considering motions to dismiss, "a court should not decide questions of fact." *Roeder v. Alpha Industries*, 814 F.2d 22, 25 (1st Cir.1987). Rather, a district court must accept the allegations contained in the complaint as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *See Cooperman v. Individual*, 171 F.3d 43, 46 (1st Cir.1999). Further, a plaintiff's complaint need not provide a detailed narrative of the facts, but must only include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Educadores Puertorriquenos En Accion v. Hernandez*, 367 F.3d 61, 66 (1st Cir.2004) (internal citations omitted). Thus, "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). On the basis of the facts presented

above, the Union has met its burden, and the Court should deny the Defendant's Fed. R. Civ. P. 12(b)(6) motion.

### IV.     Argument

   A.   Under the facts alleged by the Union, the Defendant failed to provide proper notice under the WARN Act before closing its Harrisville facility.

Pursuant to the WARN Act, 29 U.S.C. § 2102(a)(1), "An employer shall not order a plant closing . . . until the end of a 60-day period after the employer serves written notice of such an order . . . to each representative of the affected employees[4] as of the time of the notice." A "plant closing" is defined as the "permanent or temporary shutdown of a single site of employment, . . ., if the shutdown results in an employment loss at the single sit of employment during any 30-day period for 50 or more employees. . . ."[5] 29 U.S.C. 2101(a)(2). Under the WARN Act, "employment loss" is defined as: A) an employment termination other than a discharge for cause, voluntary departure, or retirement, B) a layoff exceeding 6 months, or C) a reduction of hours of work of more than 50 percent during each month of any 6-month period." 29 U.S.C. § 2101(a)(6).

---

[4] The statute defines the term "affected employee" as an employee who may reasonably be expected to experience an "employment loss as a consequence of a proposed plant closing . . .." 29 U.S.C. § 2101(a)(5). The enabling regulations further defined "affected employees" to mean "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." *See* 20 CFR 639.3 (e).

[5] Under 29 U.S.C. § 2102(d), the requirement, outlined in 29 U.S.C. § 2101(a)(2), that fifty employees must suffer an employment loss within 30 days to meet the definition of a plant closing is expanded to 90 days. "For purposes of this section, in determining whether a plant closing . . . has occurred or will occur, employment losses for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees specified in section 2101(a)(2) . . . but which in the aggregate exceed that minimum number, and which occur within any 90-day period shall be considered to be a plant closing . . . unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter." *See* 29 U.S.C. § 2102(d). In this case, the Defendant initially planned to close the production line by September 30, 2004 and to terminate all other employees by October 15, 2004. Hence, in this case the statutory time frame should be expanded to 90 days, as there were at least two groups the employer planned to lay off at the Harrisville plant within 45 days of the plant shutdown announcement.

6

Further, for the purpose of calculating whether a plant closing triggers the WARN Act's provisions, employment losses include *both* employment actions *planned* and employment actions *taken* over the (30 or 90 day) statutory time period(s) after the plant shutdown is announced. *See* 20 C.F.R. 639.5(a)(i), (ii) (emphasis added). This regulation requiring the employer to notify employees before any planned employment action (meeting the WARN Act's threshold requirement for employment losses) ensures that the WARN Act's notice provisions, "to ensure adequate opportunities (by way of notice of imminent employment loss) for retraining and/or reemployment," will be fulfilled by requiring an employer, on the verge of a shutdown, to contemplate who is likely to be affected and to provide them ample opportunity to find alternative employment opportunities. *See Moore v. Warehouse Club, Inc.*, 992 F.2d 27, 30 (3d Cir.1993); *see, e.g., Amatuzio v. Gandalf Systems Corp.*, 994 F.Supp. 253, 276-77 (D. NJ 1998) (employer may not evade WARN Act notification requirements by phasing shutdown-related layoffs over several months, so that less than 50 employees suffer an employment loss within the statutory timeframe).

On these bases, and by the facts pled in the Union's complaint, the Defendant violated the WARN Act by failing to provide at least 60 days notice before the planned termination of all 50 employees within 45 days of the Defendant's shutdown announcement. *See* footnote 5, *supra;* 29 U.S.C. § 2102(d). First, on August 25, 2004 the Defendant announced that production would close as of September 30, 2004, causing the lay-off of almost the entire production line. Further, the Defendant announced that the entire plant would close on October 15, 2004. In its announcement, the Defendant did not suggest that any jobs would be saved or protected; rather, the Defendant planned to

terminate all of the employees at the Harrisville Plant before or on October 15, 2004. Hence, even if there were still individuals on the Defendant's payroll 90 days after its plant shutdown announcement, the termination of all 50 employees was planned to take place within the requisite 90 day period, and, as a result, 60 days notice under 29 U.S.C. § 2102(a)(1).   Because the facts alleged in the Complaint demonstrate that the Defendant failed to do so, this court must deny the Defendant's Motion to Dismiss.

> B. Further, as a result of the Defendant's closure of the Harrisville facility, at least 50 employees suffered an employment loss, as defined by the Act; the Defendant may not circumvent the WARN Act's notification requirement by providing temporary, non-equivalent employment to several employees after shutting down the Harrisville facility.

In its Motion, the Defendant improperly truncates the factual allegations within the Union's Complaint to assert that 50 employees did not suffer job loss, and on this basis, argues that the Union has not pled facts sufficient to state a claim under the WARN Act. Specifically, the Defendant states that there was no plant shutdown as defined by 29 U.S.C. § 2101(a)(2) because the Complaint states that there were "workers who continued to work at the plant" after the September 10, 2004 plant closing, and therefore less than 50 employees suffered "an employment loss" as defined by the Act.  *See* Motion to Dismiss at 4-5.   On the contrary, the factual allegations contained in the Union's complaint, presented in an unabridged form within context make abundantly clear that, as a result of the Defendant's shutdown of the Harrisville plant, all 50 employees suffered an employment loss as defined by the Act.  *See* 29 U.S.C. § 2101(a)(6)(A).

The Complaint states, in relevant part, that the Defendant did not announce the Harrisville plant's permanent shutdown until August 25, 2004 and that the production line was shutdown permanent as of September 10, 2004.  Further, the Defendant planned

8

that the entire plant would close no later than October 15, 2004.  The workers' temporary positions varied considerably from their former positions prior to the shutdown of the Defendant's production lines.  Unlike the positions the former production and maintenance workers had prior to the closure of the Harrisville plant, the temporary positions provided by the employer provided no job security.  In fact, the temporary workers' tenure was explicitly limited by the Defendant to the time needed to wind down and sell the Harrisville facility.  Further, the temporary workers had completely different job duties after the shutdown, relating to disassembling and guarding the plant—a far cry from their previous production, maintenance, administrative, and managerial duties.   In essence, the employees who "continued to work" had their permanent positions terminated when plant operations closed, and after, worked in temporary positions which bore no resemblance to their pre-shutdown employment.

In determining whether employment losses, as defined by 29 U.S.C. § 2101(a)(6), have occurred, the Courts have applied a "practical, effects-driven analysis of whether a break in employment actually occurred to trigger the notification requirements of the WARN Act." *See, e.g., Wiltz v. M/G Transport Services,* 128 F.3d 957, 964 (6th Cir. 1997); Martin v. AMR Servs. Corp., 877 F. Supp.108 (E.D.N.Y. 1995), aff'd Gonzalez v. AMR Servs. Corp., 68 F.3d 1529, 1531 (2d Cir. 1995). Where an employer offers employees lesser, non-equivalent employment after a shutdown, the courts have found that the employees have suffered an employment loss.  *See Local 819, Int'l Bhd. of Teamsters, AFL-CIO v. Textile Deliveries, Inc.,* 2000 WL 1357494, *4-*5 (S.D.N.Y.)(former union members required to apply for positions at successor employer without benefit of union contract and related benefits (*e.g*., seniority, health, welfare,

9

pension and vacation benefits) suffered employment loss after original employer was sold to successor employer); *Moreno v. DFG Foods, LLC*, 2003 WL 21183903, *5 (N.D.Ill. 2003) (employees offered opportunity to transfer from one food preparation subsidiary of employer to another subsidiary after shutdown may still suffer an employment loss because terms and conditions of employment differed between two subsidiaries, and therefore company may have affected constructive discharge); *cf. Int'l Alliance of Theatrical & Stage Employees & Moving Picture Mach. Operators v. Compact Video Servs., Inc.*, 50 F.3d 1464, 1465-68 (9th Cir.1995) (WARN not implicated in sale of business despite termination letter from seller and requirement that employees apply for employment with buyer where buyer offered comparable employment to 309 of 314 employees of seller); *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1280-81 (10th Cir.1994) (no termination where employees immediately rehired in comparable positions and never faced need to find new jobs). This is because, "[e]ven if employees do not experience a temporal break in employment, employees may experience an employment loss if they are rehired, transferred, or reassigned to positions that amount to constructive discharges." *Local 819, Int'l Bhd. of Teamsters, AFL-CIO v. Textile Deliveries, Inc.,* 2000 WL 1357494 at *5; *see* 20 C.F.R. § 639.3(f)(2) 20 C.F.R. § 639.5(b)(2); see also 54 Fed. Reg. 16,042, 16,047 (1989). Where employees are rehired into inferior positions under unfavorable terms and conditions, such rehiring may also lead to employment losses. *Local 819, supra,* at 5.

Under this "practical, effects-driven analysis", even those Harrisville employees who were offered and accepted temporary employment suffered employment losses under the Act. Bluntly put, the temporary positions given to former Harrisville

employees were dead end jobs, literally created to facilitate the Harrisville facilities' closure and sale. On these bases, the Defendant's assertion that Harrisville employees did not suffer an employment loss because they "continued to work" is plainly disingenuous and should be discounted.

### V. Conclusion

For the reasons submitted herein, the Union respectfully requests that the Defendant's Motion to Dismiss be denied.

Respectfully submitted,

UNITED STEELWORKERS OF AMERICA, AFL-CIO/CLC

By their attorneys,

s/ Nicole Horberg Decter
Warren H. Pyle, BBO #408400
Nicole Horberg Decter, BBO #658268
Pyle, Rome, Lichten, Ehrenberg, & Liss-Riordan, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
(617) 367-7200

Dated: April 11, 2005